# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**TIMOTHY EDWARD PERRY, #T0478**                                        **PLAINTIFF**

**VS.**                                             **CIVIL ACTION NO. 4:08cv25-LRA**

**JOHNNY CROCKETT, ET AL**                                                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

### I. Procedural Background

Timothy Edward Perry [hereinafter "Plaintiff"], *pro se,* and Michael Jeffrey Wolf, Royce Cole, and Vardaman K. Smith III, counsel for Defendants, appeared before the undersigned United States Magistrate Judge on the 19th day of August, 2008, for an omnibus hearing. The Court scheduled this hearing to function as a scheduling/case management conference, a discovery conference, and as a pretrial conference. The hearing was also conducted in order to more closely screen Plaintiff's factual allegations and determine if they are sufficient to maintain the case under 28 U.S.C. §1915(e). After the hearing, Defendants Johnny Crockett, Margie Donald, Geneva Westerfield, and Ellis Smoot filed a "Motion for Qualified Immunity" [#41]. By Memorandum Opinion and Order [#47], Defendants Crockett, Donald, Westerfield and Smoot were dismissed; Final Judgment [#48] was entered in their favor.

Thereafter, Defendant Rochel Thornton-Walker, M.D., filed a Motion for Summary Judgment [#60], and it is now before the Court for consideration. The Court has also considered the claims against Defendants Sharon Page and Kevin Reid in

light of Plaintiff's testimony at the omnibus hearing, and the medical records, to determine if Plaintiff has stated a claim upon which relief could be granted under 42 U.S.C. § 1915.

Jurisdiction of this case is based upon 42 U.S.C. § 1983, and it was assigned to the undersigned United States Magistrate Judge for all purposes pursuant to the consent of the parties by Order [docket entry number 38] entered by District Judge Tom S. Lee.

## II.  Facts Alleged by Plaintiff

Plaintiff testified under oath at the omnibus hearing, and explained his complaints against Defendants Dr. Thornton-Walker, Captain Sharon Page, and Officer Kevin Reid as follows.

Plaintiff stated that the main issues in his case are denial of medical care and delay of medical care.  On or about Saturday, August 18, 2007, while incarcerated in the Kemper-Neshoba Regional Correctional Facility [KMRCF], Plaintiff was in the zone watching television.  Another inmate, Steven Barnhart, changed the channel without asking the other inmates watching the television, and Plaintiff changed it back.  Barnhart pushed Plaintiff out of his chair, and Plaintiff fell and broke his wrist.  Defendant Officer Ellis Smoot arrived and called the jail nurse, Defendant Geneva Westerfield.  According to Plaintiff, the wrist "looked broken" and he requested to be transferred to the emergency room or to Central Mississippi Correctional Facility [CMCF] in Rankin County.  He was told that there was nobody available who was qualified to transport him.

Defendant Westerfield, the nurse, examined his wrist and determined that it may be broken. She then called a physician at CMCF, Defendant Dr. Rochel Thornton-Walker, the movant herein, to report Plaintiff's medical situation. Dr. Walker instructed Nurse Westerfield to "just put ice on it" and elevate the wrist; Dr. Walker instructed that Plaintiff be transported on the following Monday to CMCF for treatment at the clinic. He was housed in isolation until that Monday.

Plaintiff was transferred to the clinic at CMCF on the following Monday afternoon, August 20, 2007. He contends that he was not given proper care until August 23rd, when he was taken to the Central Mississippi Medical Center [CMMC] for surgery. He was returned to KNRCF on or about November 7, 2007. Defendants Crockett, Donald, Smoot, and Westerfield, were only involved in the events regarding Plaintiff at the Kemper facility and his further treatment after his return to KNRCF. They have been dismissed as Defendants.

Plaintiff charges that Defendant Dr. Thornton-Walker "constructively denied medical treatment" [Complaint, p. 6] because she knew Plaintiff's arm was broken and did not order that Plaintiff be transferred to a nearby hospital or CMCF until that Monday. Further, even after his transfer to CMCF that Monday, Dr. Thornton-Walker did not have him transferred to the hospital, CMMC, until August 23, 2007. It was not until August 23rd that he underwent surgery, five days after his arm was broken. The surgery involved using a metal plate and screws to repair the broken arm. The delay in care was directly due to Dr. Thornton-Walker's deliberate indifference to his serious medical needs, according to Plaintiff.

3

Plaintiff also contends that he was housed in B Building at CMCF after he was transported there on Monday. He was in pain and asked Defendant Captain Sharon Page if he could see a doctor because of his constant pain and swelling. Plaintiff contends that she "refused and ignored Plaintiff's request by leaving and hiding in a room." Complaint, p. 7. Plaintiff orally expanded on this claim against Defendant Page only by stating that she "denied him medical care when he got to Rankin County."

Plaintiff alleges that he was returned to KNRCF on November 7, 2007. Then, on December 4, 2007, he was again transferred to CMCF on a court order. Defendant Kevin Reid, an officer at CMCF, searched him upon arrival. Defendant Reid dismantled a velcro brace prescribed by the orthopedic surgeon, disregarding its medical significance. In explaining this claim at the omnibus hearing, Plaintiff conceded that the brace was metal and it was confiscated as contraband. Plaintiff stated that he never received his brace back after Defendant Officer Reid took it. This was Plaintiff's entire claim against Defendant Officer Reid.

These three Defendants, Dr. Thornton-Walker, Page, and Reid were all MDOC officials at CMCF. They were not involved in the incident at KNRCF wherein Plaintiff was injured, except that Dr. Thornton-Walker gave medical advice on the phone and failed to direct that he be transferred to a hospital or to CMCF. Plaintiff's medical records were authenticated and received into evidence at the omnibus hearing; the records are filed in the docket under seal, document 50. The Court has considered these medical records in its analysis of the issues and the law in this cause.

4

### III.  Summary Judgment Standard

Summary judgment is only appropriate where there is no genuine issue as to any material fact and the Defendants are entitled to a judgment as a matter of law.  FED. R. CIV. P. 56( C ).  All of the undisputed facts, and any inferences that may be drawn from those facts, "must be viewed in the light most favorable to the non-moving party," who is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorable to him." Miller v. Leathers, 913 F.2d 1085, 1086 (4th Cir. 1990), quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of **material** fact exists.

### IV.  Analysis of the Applicable Law

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.  Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  The Fifth Circuit Court of Appeals has clearly stated that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006), citing Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).  Accordingly, although a duty is imposed on physicians who

provide care to inmates, a plaintiff must still meet an extremely high standard to establish a violation of that duty. Id.

In this case, Plaintiff's entire case surrounds the five-day delay he experienced in obtaining surgery for his broken wrist. Such a delay could easily occur in the free world. Not all surgeries are immediately performed on broken bones, and pain may be experienced regardless of when the surgery is performed. The Court finds that Plaintiff falls far short of stating facts which would show that Dr. Thornton-Walker's conduct constituted deliberate indifference to his serious medical needs, or that her conduct caused him to endure an unnecessary and wanton infliction of pain. In making this finding, the Court has carefully considered Plaintiff's testimony at the omnibus hearing, his medical records, and the Affidavit of Dr. Thornton-Walker, Exhibit A [60-2].

The review confirms that Nurse Westerfield initially examined Plaintiff and then paged the movant Dr. Thornton-Walker. Dr. Thornton-Walker utilized Donna Pittman, a Family Nurse Practitioner, to telephone Nurse Westerfield and determine the facts surrounding Plaintiff's condition. (00171). Dr. Thornton-Walker determined that Plaintiff had not sustained an open fracture and that his neurovascular system was intact; because of this, no emergency orthopedic consultation was required. Affidavit, document 60-2, p. 2. However, she also ordered that Plaintiff be transferred to CMCF on Monday, August 20, 2007, in order to undergo x-rays. (00171, 0000022). After being informed of Plaintiff's symptoms, she ordered that Plaintiff receive Ibuprofen 800 mg every 4 hours for pain, that he continue using the ice pack and splint, and that his wrists be elevated. On Sunday, August 19, Plaintiff was examined by a nurse and still

6

given Ibuprofen every four hours. The records show he stated, "I can hold out until tomorrow." (00170-71). He was again examined by Nurse Westerfield on Monday; her records indicate he was not short of breath, his color was pink, and his vital signs were stable. (00170).

Plaintiff was transferred to CMCF on Monday, August 20. An x-ray of his left arm and wrist was obtained, and the x-ray report was dictated on August 21, 2007. It indicated the presence of a comminuted fracture of the distal radius with dorsal angulation and a small bone chip noted dorsal to the distal ulnar. (000110). On August 21st, Plaintiff completed a sick call request form reporting that he was in bad pain and that his swelling had increased. He was seen in the clinic at CMCF and given Ibuprofen 200 mg for pain. (000040). Also on that date, Dr. Thornton-Walker received the radiology report on the x-ray and completed a Speciality Care Consultation Form that referred Plaintiff for an orthopedic consultation. Pursuant to that referral, Plaintiff was seen by Dr. Gary McCarthy, an orthopedic surgeon, on August 22, and plans were made for surgery the next day. Plaintiff was admitted to CMMC that day, and surgery was performed the next day, August 23. He was discharged from CMMC on August 24. The surgery was successful. (00133-34).

In this case, Plaintiff charges only that Dr. Thornton-Walker *delayed* his medical care by not ordering that he be transferred immediately to a hospital of CMCF after his arm was broken. He contends that this weekend delay, plus the delay of two days after being transferred on Monday, shows that she acted with deliberate indifference to his serious medical needs. A mere delay in receiving care is not in and of itself a

7

constitutional violation.  Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006).  Further, a mere disagreement with the nature of treatment provided does not establish deliberate indifference.  Id.

A delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm.  Mendoza, 989 F.2d at 193, citing Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (delay must constitute "deliberate indifference"); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (delay must result in "substantial harm"). In this case, there in nothing in Plaintiff's medical records to indicate that he was harmed because the surgery was delayed; his broken bone healed properly.

To establish deliberate indifference, a prisoner must submit evidence that prison officers refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Domino v. Texas Dept. of Crim Justice, 239 F.3d 752, 756 (5th Cir. 2001), citing Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).  Taking everything Plaintiff has stated as true, he has failed to show that Dr. Thornton-Walker refused him treatment, ignored him, or treated him incorrectly.

The facts in Plaintiff's case, as stated by him, and as augmented by his medical records, do not rise to a finding of "deliberate indifference."  Plaintiff was immediately treated by nurse Defendant Westerfield.  Dr. Walker directed the treatment thereafter, after confirming that his wound did not require emergency orthopedic consultation or treatment.   Medical records, #50, "Physician's Orders"; Exhibit 1, "Medical Incident

8

Examination." As earlier stated, Dr. Thornton-Walker confirmed that Plaintiff had not sustained an open fracture and that his neurovascular system was intact; her decision not to transfer him immediately was made after being advised of his condition by both Nurse Westerfield and Nurse Practitioner Pittman. Affidavit, p. 2, document 60-2. On the Monday that Plaintiff was transferred, he was x-rayed. The report was dictated and transcribed the next day, August 21, and Dr. Thornton-Walker reviewed it and directed that he receive an orthopedic consultation. Plaintiff was taken for the consult on August 22. The injury occurred on August 18th, and Plaintiff had surgery on August 23.

A prisoner's disagreement with the type *or timing* of medical services provided cannot support a Section 1983 claim. Mendoza, 989 F.2d at 193. *See also* Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) (although delay in treating plaintiff's broken hand made surgery impractical and may have been negligent, it did not establish constitutional violation). At most, the short delay caused by Dr. Thornton-Walker's actions were negligent or careless. The United States Constitution does not forbid negligence, and Plaintiff's claim is not a cognizable claim under 42 U.S.C. § 1983. *Negligent medical care does not constitute a valid section 1983 claim.* Mendoza v. Lynaugh, 989 F.2d at 193. No constitutional claim has been set forth, accepting Plaintiff's version of the facts, as well as the description of Plaintiff's injuries and treatment contained in his medical records.

Defendant contends that she is entitled to qualified immunity from suit. "Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been

thought consistent with the rights they are alleged to have violated." Gobert, 463 F.3d at 345. The immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 457 U.S. 335, 341 (1986). To overcome the immunity, a plaintiff must show that there has been a violation of a clearly established federal constitutional or statutory right and whether the official's actions violated that right to the extent that an objectively reasonable person would have known. Id., omitting citation.

As discussed above, Plaintiff's assertions in this case do not establish a constitutional violation under the applicable law. Accordingly, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

## V. Claims Against Defendants Page and Reid

As to Defendant Page, Plaintiff contends that she ignored his complaints of pain on the Tuesday morning after he was transferred to CMCF. She had come to his unit for inspection, and he informed her of his pain. According to Plaintiff, she left and hid in a room. Complaint, p. 8. At the omnibus hearing, the Court asked Plaintiff to further explain how Defendant Page violated his constitutional rights; his response confirmed that Defendant Page's inaction is the only basis for his claim.

Plaintiff has failed to state a cause of action upon which relief may be granted as to Defendant Page. Certainly prisoners frequently ask correctional officers for assistance to no avail. Ignoring a request for medical assistance simply does not violate the United States Constitution under the facts as alleged by Plaintiff. Plaintiff

10

received further medical care that very day; in fact, he was taken to an orthopedic surgeon. The fact that Defendant Page may not have caused that to occur is irrelevant. At most, Defendant Page's actions were negligent, and negligence does not violate the Constitution.

The Court also finds that Plaintiff has failed to state a claim upon which relief could be granted as to Defendant Kevin Reid. Plaintiff was returned to CMCF on December 4, 2007, and searched by Defendant Reid upon his entry. Because his velcro brace contained metal, Defendant Reid confiscated it as a security risk. Plaintiff contends that he had worn the brace for three months with no problems and that Defendant Reid should not have interfered with his medical treatment; he "disregarded the medical significance" of the brace as it related to Plaintiff's healing.

Plaintiff was asked to expand on this claim at the omnibus hearing; the facts as stated herein were the sole basis of his claims against Defendant Reid. Again, these facts simply do not amount to a constitutional violation. At most, Defendant Reid was negligent by confiscating the brace without checking the medical records of Plaintiff. The records indicate Plaintiff's arm did heal properly, and the lack of the brace did not cause serious harm.

The factual allegations underlying Plaintiff's claims against both Page and Reid fail to state a claim upon which relief could be granted under 42 U.S.C. § 1915; the Complaint must be finally dismissed as to these Defendants.

## VI. Conclusion

The Court does hereby find that Defendant Rochel Thornton-Walker, M.D.'s Motion for Summary Judgment [#60] is well advised and it is HEREBY GRANTED. There are no material facts in dispute as to this Defendant, and a constitutional violation cannot be found under the facts as asserted by Plaintiff. Final Judgment in her favor shall be entered, and the Complaint is finally dismissed as to Defendant Thornton-Walker.

The Court also finds that Plaintiff has failed to present an arguable constitutional claim against Defendants Sharon Page and Kevin Reid. Accordingly, his Complaint is frivolous[1] as to these Defendants and fails to state a claim on which relief may be granted under 28 U.S.C. 1915(e)(2)(B). The Complaint is hereby dismissed with prejudice as to these Defendants, and Final Judgment in their favor shall also be entered on this date.

IT IS SO ORDERED, this the 9th day of April, 2010.

S/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE

---

[1] "Frivolous" in this context is a legal term of art that indicates that, although the Plaintiff's allegations are serious to him, and may, indeed, be based on a tangible injury, the theory on which his claims are based are "indisputably meritless" in a legal sense. See Allison v. Kyle, 66 F.3d 71, 73 (5th Cir. 1995)